NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRUSTEES OF THE UFCW LOCAL 152 HEALTH AND WELFARE FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LIBERTY FOOD STORE, INC. T/A RISOLDI'S MARKET, <br><br> Defendant. | Civil Action No. 17-6811 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiffs the United Food and Commercial Workers ("UFCW") Local 152 Health and Welfare Fund, the UFCW Local 152 Savings Plan, the UFCW Union and Participating Food Industry Employers Health and Welfare Fund, the UFCW Union Retirement and Savings Plan (collectively, "Funds"); the respective Trustees of the Funds (collectively, "Trustees"); and the respective Boards of Trustees' (collectively, "Plaintiffs") Motion for Summary Judgment. (ECF No. 24.) Defendant Liberty Food Store, Inc. t/a Risoldi's Market ("Liberty Food" or "Defendant") opposed (ECF No. 25), and Plaintiffs replied (ECF No. 26). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants Plaintiffs' Motion.

## I. BACKGROUND[1]

Plaintiffs bring this action, pursuant to Sections 502(g)(2) and 505 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(g)(2) and 1145, seeking to recover delinquent contributions Defendant owes under the parties' agreements—the collective bargaining agreements ("CBAs") and memoranda of agreement ("MOA") between Defendant and UFCW Union Local 152 ( "Local 152") and between Defendant and UFCW Union Local 1360 ("Local 1360"), Trust Agreements for the relevant Funds (collectively, "Trust Agreements"), and the policies for the collection of delinquent fringe benefit contributions for the Funds (collectively, the "Collection Policies"). (Pls.' Moving Br. 1, ECF No. 24-1; Compl. ¶ 36, ECF No. 1.) Relying on these documents, the certifications of the Funds' account managers, and the certification of Plaintiffs' attorney, Plaintiffs move for summary judgment to recover delinquent contributions, interest charges, liquidated damages, audit costs, and attorneys' fees.

### A. The Collective Bargaining Agreements, Memoranda of Agreements, Trust Agreements, and Collection Policies

On February 22, 2013, Defendant entered a CBA with Local 152 setting forth Defendant's obligations to remit fringe benefit contributions to the Health and Welfare Program on behalf of its Local 152 union employees from May 1, 2010 through April 30, 2017. (PSMF ¶ 2; Local 152

---

[1] "[Defendant] does not dispute the factual allegations set forth in Plaintiff's Statement of Material Fact." (Def.'s Suppl. Statement of Material Fact ("DSMF") 1, ECF No. 25-2.) Plaintiffs do not dispute Defendant's counterstatement of facts but does note that certain facts are irrelevant under Federal Rule of Evidence 401. (*See generally* Pls.' Response to DSMF, ECF No. 26.) Because the parties do not dispute each set of facts, the Court cites only to Plaintiffs' Statement of Material Facts ("PSMF", ECF No. 24-2) and Defendant's Supplemental Statement of Material Facts (DSMF, ECF No. 25-2).

The Court notes, however, Plaintiffs do not cite to their Statement of Facts in their brief. A motion for summary judgment that fails to cite to the accompanying statement of facts violates the spirit of the Local Rules. *See* L.Civ.R. 56.1 ("A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed."). The Court, nonetheless, decides Plaintiffs' Motion.

CBA 1–2, Ex. A to Okerson Cert., ECF No. 24-8 at *1–31).[2] On January 25, 2018, in a separate MOA, the parties agreed that Defendant's obligation to remit contributions to the Local Savings Plan "shall be discontinued and there shall be no contributions for the term of this agreement" effective September 1, 2017—but Defendant remained obligated to remit contributions to the Local Savings Plan prior to September 1, 2017. (PSMF ¶ 6; Local 152 MOA 1–2, Ex. B to Okerson Cert., ECF No. 24-8 at *32–34.)

On May 29, 2012, Defendant entered a CBA with Local 1360 setting forth Defendant's obligations to remit fringe benefit contributions to the UFCW Health and Welfare Fund and UFCW Retirement and Savings Funds (a/k/a UFCW Supplemental Pension Fund) on behalf of Local 1360 union employees from January 24, 2010, through January 23, 2017. (PSMF ¶¶ 8, 10; Local 1360 CBA 1–2, Ex. C to Okerson Cert., ECF No. 24-8 at *35–72.) On November 8, 2017, in a separate MOA, the parties agreed, "effective October 1, 2017, [Defendant's] contributions to UFCW Retirement and Savings Funds shall be discontinued with no contributions for the term of this contract." (PSMF ¶ 9, Local 1360 MOA 1–2, Ex. D to Okerson Cert., ECF No. 24-8 at *73–75.) Defendant further agreed under the MOA to contribute to the Health and Welfare Fund on behalf of certain employees from January 24, 2017, to January 22, 2022. (PSMF ¶ 11, Local 1360 MOA 1–2.)

By signing the Local 152 and Local 1360 CBAs and MOAs, Defendant agreed to the terms and conditions of the individual Trust Agreements and associated Collection Policies. (PSMF ¶ 12; *see also* UFCW Local 152 Health and Welfare Fund Policy and Procedure for Collection of Delinquent Contributions and Payroll Audits, Ex. F to Okerson Cert. ("Local 152 H&W Fund Collection Policy"), ECF No. 24-9 at *1–14; UFCW Local 152 Savings Fund Policy and Procedure

---

[2] Page numbers preceded with an asterisk reference the page numbers at the top of the ECF filing.

for Collection of Delinquent Contributions and Payroll Audits ("Local 152 Savings Fund Collection Policy"), Ex. I to Okerson Cert., ECF No. 24-9 at *70–82; UFCW Union and Participating Food Industry Employers Health and Welfare Fund Policy and Procedure for Collection of Delinquent Contributions and Payroll Edits ("Local 1360 H&W Fund Collection Policy"), Ex. D to McGurk Cert., ECF No. 24-6 at *75–94; UFCW and Employers Supplemental Pension Fund Policy and Procedure for Collection of Delinquent Contributions and Payroll Audits ("Retirement and Savings Collection Policy"), Ex. L to Okerson Cert., ECF No. 24-9 at *110–124.)

Under the Local 152 H&W Fund Collection Policy, within ten days of the fund's initial delinquency notice, Defendant became liable for delinquent contributions, interest charges, liquidated damages, and attorneys' fees and costs. (PSMF ¶¶ 15–20.) As to payroll audits, the Trustee had discretion to determine which employer in the fund would be audited in each year and Defendant was audited at least once during each three-year period. (*Id.* ¶ 21.) Defendant was liable for costs of the audit in certain instances. (*Id.* ¶ 22.)

Under the Local 152 Savings Fund Collection Policy, within ten days of the fund's initial delinquency notice, Defendant became liable for delinquent contributions, interest, liquidated damages, attorneys' fees and costs. (PSMF ¶¶ 64–69.) As to payroll audits, the Trustee had discretion to determine which employer in the fund would be audited in each year and Defendant was audited at least once during each three-year period. (*Id.* ¶ 70.) Defendant was liable for costs of the audit in certain instances. (*Id.* ¶ 73.)

Under the Local 1360 H&W Fund Collection Policy, within ten days of the fund's initial delinquency notice, Defendant became liable for delinquent contributions, interest, liquidated damages, attorneys' fees and costs. (PSMF ¶¶ 40–45.) As to payroll audits, the Trustee had

4

discretion to determine which employer in the fund would be audited in each year and Defendant was audited at least once during each three-year period. (*Id.* ¶ 46.) Defendant was liable for costs of the audit in certain instances. (*Id.* ¶ 49.)

Under the Retirement and Savings Collection Policy, within fifteen days of the fund's initial delinquency notice, Defendant became liable for delinquent contributions, interest, liquidated damages, attorneys' fees and costs. (PSMF ¶¶ 83–88.) As to payroll audits, the Trustee had discretion to determine which employer in the fund would be audited in each year and Defendant was audited at least once during each three-year period. (*Id.* ¶ 89.) Defendant was liable for costs of the audit in certain instances. (*Id.* ¶ 91.)

B.  **Suspension of Benefits**

Under the Local 152 H&W Fund Collection Policy, the Funds could suspend employee benefits and payments if Defendant became delinquent for a period of four months and until such time as all indebtedness to the Fund has been resolved. (PSMF ¶ 28.) Accordingly, when Defendant failed to remit contributions from June 2017 to September 2017, the Local 152 H&W Fund suspended employee health and welfare benefits beginning in October 2017. (*Id.* ¶¶ 27, 29.)

Under the Local 1360 H&W Fund Collection Policy, the Funds could suspend employee benefits and payments if Defendant became delinquent for a period of four months and until such time as all indebtedness to the Fund has been resolved. (*Id.* ¶ 54.) When Defendant failed to remit contributions from May 2017 to August 2017, the Local 1360 H&W Fund suspended employee health and welfare benefits beginning in September 2017. (*Id.* ¶¶ 53, 55.)

C. **Contribution, Interest, Liquidated Damages, and Audit Costs**

Plaintiffs tabulated the following amounts as owed by Defendant to the Funds:

| Fund (Relevant time period) | Contribution Amounts | Interest Charges | Liquidated Damages | Audit Cost | Total |
|---|---|---|---|---|---|
| 152 H&W (5/16–9/17) | $19,873.87 | $4,989.06 | $9,803.95 | $0.00 | $34,666.88 |
| 152 H&W Audits | $77,868.24 | $11,634.73 | $15,573.65 | $754.78 | $105,831.40 |
| 152 Savings (8/16–7/17) | $0.00 | $66.26 | $318.73 | $0.00 | $384.99 |
| 152 Savings Audit | $1,769.24 | $435.90 | $353.86 | $585.64 | $3,144.64 |
| Retirement & Savings (8/16–8/17) | $0.00 | $185.04 | $849.03 | $0.00 | $1,034.07 |
| Retirement & Savings Audits | $6,956.02 | $1,846.23 | $1,391.20 | $1,451.23 | $11,644.68 |
| 1360 H&W (5/16–8/17) | $41,723.77 | $6,882.06 | $13,056.58 | $0.00 | $61,662.41 |
| 1360 H&W Audits | $90,015.34 | $7,396.23 | $18,003.06 | $1,010.78 | $116,425.41 |
| Total | $238,206.48 | $33,435.51 | $59,350.06 | $3,802.43 | $334,794.48 |

(PSMF ¶ 97; *see also id.* ¶¶ 98–101.)

D.   Attorneys' Fees and Costs

Plaintiffs tabulated the following reasonable attorneys' fees and costs:

| Fund | Attorneys' Fees (Relevant time period) | Costs | Total |
|---|---|---|---|
| 152 H&W | $23,801.00 (8/1/2017–5/24/2019) | $1,076.48 | $24,877.48 |
| 1360 H&W | $17,205.00 (8/1/2017–5/24/2019) | $167.23 | $17,372.23 |
| Retirement & Savings | $17,042.50 (8/1/2017–5/24/2019) | $167.24 | $17,209.74 |
| Total | $58,048.50 | $1,410.95 | $59,459.45 |

(Feehan Cert. to Pl.'s Moving Br. ¶¶ 3–8, ECF No. 24-3; *see also* Exs. A–C to Feehan Cert., ECF No. 24-4.)

II.   **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, . . . or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c).

The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

7

The Court must consider all facts and their logical inferences in the light most favorable to the nonmoving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

Defendant does not dispute any facts in the record, including, generally, Plaintiffs' calculation of the delinquent contributions, interest, liquidated damages, payroll audit, attorneys' fees, and costs owed. (*See* DSMF 1.) Defendant opposes Plaintiffs' motion only to the extent Plaintiffs seek contributions for the period during which Plaintiffs suspended and provided its employees no benefit coverage. (Def.'s Opp'n Br. 1, ECF No. 25.)

It is undisputed that the Local 152 H&W Fund suspended the health coverage for Defendant's Local 152 Union member employees on October 1, 2017 and that the Local 1360 H&W Fund suspended the health coverage for Defendant's Local 1360 Union member employees on September 1, 2017. (Pls.' Reply Br. 1; PSMF ¶¶ 27–29, 53–55.) Plaintiffs argue, however, that Defendant has not set forth, and the record does not provide support for, any of the three recognized defenses against a delinquency suit brought pursuant to a CBA. (Pls.' Reply Br. 3 (citing *Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1105–06 (3d Cir. 1996)).) Plaintiffs argue that "[Defendant's] obligation to contribute to the funds did not suddenly cease when benefits were suspended." (*Id.* at 4.)

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Courts have long applied Section 515 to "preclud[e] employers from raising a variety of contract defenses as a means of avoiding the obligation to contribute to employee benefit plans." *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (citation omitted) (collecting cases denying defenses asserting defects in formation of the CBA and abandonment of CBA). *See also Huge v. Long's Hauling Co.*, 590 F.2d 457, 459 (3d Cir. 1978) ("[C]ourts have been extremely reluctant to recognize any defense to an employer's promise to pay into a pension fund."). To that end, the Third Circuit only recognizes three defenses against a delinquency suit: (1) that the fund contributions themselves are illegal; (2) that the agreement is void *ab initio*, due to fraud in the execution; and (3) that the employees have voted to decertify the union as their bargaining representative. *Id.*

Defendant does not argue any of the three recognized defenses. Nor does it provide case law to support its argument that, because employee benefits were suspended for certain periods of time, Defendant need not contribute for those periods. Moreover, the CBAs authorized the Funds to suspend employee benefits once Defendant became delinquent for a period of four months. The Court, accordingly, finds Defendant may not skirt its obligations under the CBAs even though the Funds suspended employee benefits. Plaintiffs are entitled to the total amount listed in Section I.C. ($334,794.48) of this Memorandum Opinion.

Moreover, Defendant does not oppose Plaintiffs' request for attorneys' fees. Section 502 of "ERISA mandates an award of reasonable attorneys' fees when, as here, [] fund[s] prevail[] in an action for unpaid contributions pursuant to 29 U.S.C. § 1145." *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 285 (3d Cir. 2007). "In requesting, challenging, and granting attorneys' fees, specificity is critical. A request for fees must be accompanied by fairly definite information as to hours devoted to various general activities." *Id.* at 291 (citation

omitted). Here, Plaintiffs provide a detailed accounting of the requested attorneys' fees and costs, which the Court has reviewed. (*See* Exs. A–C to Feehan Cert.) Because the Court awards "judgment in favor of the plan[s]" by awarding "the unpaid contributions" and the "interest on the unpaid contributions" under 29 U.S.C. § 1145, the Court grants Plaintiffs' request for the reasonable attorneys' fees and costs listed in Section I.D. ($59,459.45) of this Memorandum Opinion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted. The Court will enter an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**